JOHNSON, REAVES & JOHNSON v. CHEROKEE LAND AND IRON COMPANY.

No. 3128.

1. **Pleadings—Cause of Action.**—In an action by land agents against their constituents who had discharged them in violation of the contract of employment, the allegation that plaintiffs' profit "upon the lands which they had contracted to sell would have amounted to the sum of $2000 had they been permitted to perfect the sale thereof," kept the petition from being subject to a general demurrer.

2. **Same—Practice.**—Such allegation would have been bad on special exception, but upon such exception being sustained the plaintiffs should have been allowed to amend by setting forth the particular transactions from which the damages resulted.

3. **Damages — Pleading.** — General allegations as to unearned profits resulting from a breach of contract, without details, and of speculative nature, are insufficient to show a cause of action, upon general demurrer. See example.

APPEAL from Cherokee. Tried below before Hon. JAMES I. PERKINS.

The opinion states the case.

*M. J. Whitman, T. B. Butler, John M. Duncan,* and *H. B. Marsh,* for appellants.—1. The petition having alleged sufficient facts to show at least a prima facie cause of action, and the rule being that every reasonable intendment should be indulged in favor of it upon general exception, was sufficient, and it was error in the court to sustain the exception. Railway v. Montier, 61 Texas, 122; Whetstone v. Coffey, 48 Texas, 271; McCauley v. Lang, 61 Texas, 74; Railway v. Morris, 68 Texas, 49.

2. The petition claiming that plaintiffs were by the breach of the contract deprived of commissions amounting to $2000 upon land which they had already contracted to sell, was good on general exception, and the court should not have sustained such exception and dismissed the suit, and this though the allegations as to future commissions on land not then already contracted to be sold may have been subject to demurrer. Ward v. Ward, 1 Posey's U. C., 123; Buchanan v. Bilger, 64 Texas, 589; Shirley v. Railway, 45 Texas, 355; Frye v. Railway, 67 Me., 414; Wakeman v. Mfg. Co., 101 N. Y., 205; Dennis v. Maxfield, 10 Allen, 138; 1 Suth. on Dam., 113.

3. Profits or gains and benefits which are the direct and immediate fruits of the contract, and which have no reference to dependent and collateral engagements entered into on the faith and expectation of the performance of the contract, are proper elements of damages, and this though the profits may be uncertain and difficult of proof.

*Gregg & Morris,* for appellee.—1. The petition having failed to allege sufficient facts to show that appellants are entitled to recover a judgment of appellee, the exceptions were properly sustained by the court. Hope v. Alley, 9 Texas, 395; 3 Texas Law Rev., 299; Railway v. Joachimi, 58 Texas, 456; Farrar v. Beeman, 63 Texas, 176.

2. The allegation in appellants' petition that plaintiffs were by the breach of the contract deprived of the commissions, amounting to $2000, upon said land, of which they were negotiating sale, is insufficient in law and subject to general demurrer for uncertainty. Osborne v. Holland, 1 Ct. App. C. C., sec. 1089; Railway v. Elam, Id., sec. 447.

3. A person who has been stopped in the performance of a contract by the default or direction of his employer may recover the natural and probable profits his contract would have yielded him, when they

are certain, and not contingent, speculative, and remote. Railway v. Joachimi, 58 Texas, 456; Porter v. Burkett, 65 Texas, 383; Jones v. George, 56 Texas, 149.

HENRY, ASSOCIATE JUSTICE.—This suit was brought by the appellants. Their petition sets out their cause of action substantially as follows:

"That heretofore, on the 2d day of November, 1888, plaintiffs and defendant entered into a contract in writing, by the terms of which defendant appointed plaintiffs its agents to solicit, sell, and contract for the sale of real estate belonging to the defendant, situated at New Birmingham, Cherokee County, Texas; that the plaintiffs agreed to solicit, sell, and contract for the sale of the lands above mentioned, and to refer purchasers to said company for the sale of said lands; that said contract was for the period of two years, and that in consideration of the services to be rendered by plaintiffs the defendant company agreed to pay them 5 per cent commissions on the sales made directly or indirectly through their agency, and it was expressly agreed that every person introduced to said company by plaintiffs who should purchase any of the property above mentioned within twenty days from the date of such introduction should be deemed a customer of plaintiffs, and when such person had purchased property plaintiffs would be entitled to the commissions for the same in like manner as if the purchase had been made directly by them from plaintiffs; that plaintiffs, after the making of said contract, entered at once in good faith upon the carrying out of the terms of the same; that for this purpose they established an office at the town of Rusk, Cherokee County, Texas; that they rented a house for this purpose, and that they rented the same for the period of —— months, and that they agreed and contracted to pay for said house for said time $10 per month; that they bought all necessary furniture and stationery for the fitting up of a first-class real estate office; that they paid for said furniture, etc., the sum of $100; that defendant did not keep its contract as it had agreed to do, but on the 24th day of December, 1888, it repudiated said contract and refused to permit plaintiffs to further carry out the same; that by reason of the breach of said contract by the defendant plaintiffs have lost the rents of said house, they being unable since that time to rent the same; that their business has been broken up, and their furniture and stationery has been rendered worthless and of no value; that at the time said contract was made defendant had bought large quantities of lands in and near the town of New Birmingham, Cherokee County, Texas; that it had laid out said town of New Birmingham upon said land; that it had divided the same into lots, blocks, streets, avenues, alleys, parks, hotel reserves, furnace reserves, and other reserves too numerous to mention, as appears from a map of said New Birmingham made under the super-

vision of defendant, which is hereto attached, marked exhibit A, and made a part of this petition; that it had constructed and was then constructing streets and beautifying the grounds; that said town of New Birmingham is situated in the midst of extensive iron beds; that large furnaces were being constructed in said town; that manufactories of all kinds were in contemplation, and then and there being constructed; that large numbers of people were daily going to said town for the purpose of buying property therein; that all of said property was suitable and desirable for the construction of residences thereon, and the erection of business houses and manufactories; that said town had been extensively advertised throughout the length and breadth of the country, and that the advantages there offered to investors were extensively known; that plaintiffs during the time they acted as agents for defendant sold large quantities of lands, from which they derived much pecuniary profit in the way of commissions, etc., amounting to the sum of $600; that at the time of the breach of said contract by defendant, plaintiffs were negotiating for the sale of other and larger quantities of said land; that their profits upon the lands which they had contracted to sell would have amounted to the sum of $2000 had they been permitted to perfect the sale thereof; that they would have sold many million dollars' worth of property during the time said contract was to run, and that their profits would have amounted to the sum of $25,000; that by reason of the breach of said contract they were deprived of the profits which they otherwise would have made from the sale of the land which they had already contracted to sell; and were also deprived of the profits upon the sale of the land which they otherwise could and would have sold during the two years; that by reason of the breach of said contract they have been damaged in the sum of $30,000."

The defendant filed a general demurrer, and specified grounds of demurrer as follows:

"1.   That the petition showed that defendant had paid plaintiffs all that it owed them as commissions.

"2.   That the damages sued for are unliquidated and merely speculative.

"3.   That the petition shows that plaintiffs had been discharged as the agents of defendant."

The judgment shows that the exceptions were sustained, and that upon plaintiffs declining to amend their cause was dismissed.

The allegations that plaintiffs' profits "upon the lands which they had contracted to sell would have amounted to the sum of $2000 had they been permitted to perfect the sale thereof," kept the petition from being subject to the general demurrer. If that allegation had been excepted to because of its want of particularity the exception should have been sustained, and the plaintiffs should have then been allowed to amend it and specify the particular transactions out of which such dam-

ages resulted. Even if the grounds of exception stated could be properly termed special exceptions, none of them relate to this part of the pleading.

The other allegations in regard to unearned profits resulting from the alleged breach of contract were, we think, reached by the general demurrer. In Parsons on Contracts it is said: "In an action for a breach of contract, the loss of gains which were certain and would naturally have resulted from an execution of the contract may be recovered." Vol. 1, sec. 184. And see 1 Sutherland on Damages, 108; Wood's Mayne on Damages, 36.

In the case of Hope v. Alley, 9 Texas, 394, this court, upon the subject of the right to recover as damages future profits resulting from a breach of contract, and when the offer was to prove the value of cotton produced during the year, for which slaves had been contracted for but not delivered, said: "There does not appear to have been any evidence of the special loss sustained by the plaintiff excepting an effort to prove the value of cotton that year, which was ruled out by the court. We do not believe that the court erred in ruling out such evidence under the allegations in the petition. The probable loss of such profits from the cotton crop was too remote and depended upon too many contingencies, and was too speculative in its character to have authorized its reception as evidence of any specific and certain loss. The loss should be certain; such as the value of his preparation for the crop in anticipation of the labor of the two slaves, if such had been proved, would have been."

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered November 27, 1891.